UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| Melvin Patterson, | No. 2:21-cv-02398-KJM-AC |
| Plaintiff, | ORDER |
| v. | |
| Six Flags Theme Parks Inc., et al., | |
| Defendants. | |

Plaintiff Melvin Patterson, a person who is deaf, has brought this action under Title III of the Americans with Disabilities Act (ADA) and the California Unruh Civil Rights Act (Unruh Act), alleging defendants Six Flags Theme Park, Inc., Six Flags Entertainment Corp., and Park Management Corp. (collectively, defendants) discriminated against him by not providing an American Sign Language (ASL) interpreter. Defendants move to dismiss plaintiff's first amended complaint for lack of standing and failure to state a claim. They also request the court decline to exercise supplemental jurisdiction over the Unruh Act claim. For the reasons below, the court **denies the motion.**

I.  FACTUAL ALLEGATIONS

Plaintiff Melvin Patterson is a person who is deaf, who "communicates primarily in American Sign Language." First Amended Complaint (FAC) ¶ 1, ECF No. 27. Defendants Six Flags Theme Park, Inc., Six Flags Entertainment Corp., and Park Management Corp. "own,

1

operate, and/or manage" Six Flags Discovery Kingdom (Park), an amusement park in Vallejo, California. *Id.* ¶¶ 4, 11–13. Patterson and his family "frequently visit and enjoy amusement parks together as a family activity" and purchased annual "Gold Plus" memberships[1] for Six Flags. *Id.* ¶¶ 17–20. Patterson "requires ASL interpreters to enjoy the variety of attractions Six Flags Discovery Kingdom has to offer" including various "experiences that require narration to fully enjoy." *Id.* ¶ 19. He also relies on ASL interpreters to "communicate with ride operators regarding safety precautions and simply [to] communicate questions and concerns with staff members while at the theme park." *Id.* Six Flags Discovery Kingdom's Safety & Accessibility Guide (Accessibility Guide) states that ASL interpretation will be available "if requested at least 7 days" before a planned visit. Mot. at 15–16,[2] ECF No. 28; *see* FAC ¶¶ 45–46. To request the service, guests are directed to call the operations office at (707) 556-5377. Mot. at 16; *see* FAC ¶ 45.

On June 4, 2021, Patterson "left a message at Six Flags' toll-free number requesting a return call with regard to a need for ASL interpretive services at his upcoming visits." FAC ¶ 21. He did not receive a response before he visited the Park two days later on June 6, 2021. *Id.* ¶ 22. He requested an ASL interpreter at the Guest Relations department and was informed none were available that day. *Id.* Because he did not have an ASL interpreter, Patterson "was excluded and denied the benefits of the aural information of the many shows, productions, and animal experiences at Six Flags Discovery Kingdom on the basis of his deafness" and was unable to access "periodic announcements made over the loudspeakers during his stay." *Id.* ¶ 23.

Following this trip, Patterson contacted several of defendants' staff members to share his concern about the absence of sign language interpreters and to request the service for future visits. *Id.* ¶ 24. Patterson contacted Six Flags' Guest Relations department through its website and received auto-replies. *Id.* ¶ 26. He then attempted to contact the phone number listed on the

---

[1] Patterson purchased five annual Gold Plus memberships for his family and paid additional "parking fees, deposits, and dining fees." FAC ¶ 20.

[2] When citing page numbers, the court uses the pagination automatically generated by the CM/ECF system.

Accessibility Guide "numerous times via video relay service[3] to request ASL interpreters," but he was "either disconnected or put on hold for over an hour to no avail." *Id.* ¶ 28. Patterson then made several attempts to request accommodations and/or receive a refund of his membership due to the lack of accommodation. *Id.* ¶¶ 29–45. In response, staff members, including a guest relations operational supervisor named Juliana, directed Patterson to the Accessibility Guide. *Id.* ¶¶ 35, 38–39.

On September 6, 2021, Patterson called the operations office at the number listed in the Accessibility Guide, using video relay service, and was successfully connected to a guest relations manager named Mercedes. *Id.* ¶ 46. During the call, Patterson requested an ASL interpreter for his visit on September 11, 2021, and also indicated his need for interpreters "for his subsequent planned visits . . . on September 25, October 2, October 16, October 31, November 13, and November 27, 2021 . . . ." *Id.* ¶ 47. In response to Patterson's request, Mercedes "expressly indicated several times that Six Flags Discovery Kingdom would not provide an ASL interpreter on any occasion for any reason for any person because Six Flags Discovery Kingdom does not provide ASL interpreters for its Deaf guests." *Id.* ¶ 48. Mercedes informed Patterson he would need to bring his own interpreter "at his own cost" and was directed to the Park's Personal Care Attendant (PCA) program.[4] *Id.* ¶ 48. She said the PCA program would provide a free ticket to the interpreter Patterson would bring at his own cost. *Id.* Patterson informed Mercedes of the policy set forth in the Accessibility Guide but Mercedes "confirmed with her management team that no ASL interpreter would be provided by Six Flags Discovery Kingdom for any of his future planned visits, because as a matter of policy and practice they do not provide ASL interpreters for any guest, even if requested 7 days in advance." *Id.* ¶ 49.

---

[3] "A video relay service allows deaf individuals to communicate with voice telephone users through video equipment and ASL interpretive services provided by a third party." FAC ¶ 28 n.5.

[4] "The Personal Care Attendant (PCA) program is designed to accommodate guests with disabilities who are in need of support services such as personal hygiene, eating, toileting, transferring, safe movement, maintaining continence and/or medication management, in order to participate in the Park's goods, services and attractions." FAC ¶ 52.

1  Patterson then contacted Juliana again, informing her of his discussion with Mercedes. *Id.*
2  ¶ 51. Juliana "confirmed that he would need to bring his own interpreter" and directed Patterson
3  to the PCA program. *Id.* ¶ 52. Patterson replied he did not believe the PCA program was right
4  for him and "repeated his requests for ASL interpreters and stated that [the interpreters] would
5  specifically be needed on September 11, September 25, October 2, October 16, October 31,
6  November 13, and November 27, 2021." *Id.* ¶ 53. Patterson also stated he would send further
7  requests for planned visits in December and the following year. *Id.* Juliana responded by stating
8  she could not put in the requests for an interpreter and that he would need to contact the Park. *Id.*
9  ¶ 54. In their last exchange, Juliana explained, "[i]f you have spoken to the park and they have
10 directed you to bring your own interpreter, then we may not have an interpreter of our own
11 available at the time." *Id.* ¶ 55.
12  Defendants' employees repeatedly told Patterson there were "no interpreters available," he
13 would need to bring his own interpreter and he could not receive a refund for the Gold Plus
14 memberships he purchased for his family. *Id.* ¶¶ 57–58. Patterson alleges defendants
15 intentionally discriminated against him on the basis of his disability because they prevented him
16 from having "equal access to and enjoyment of services offered by Defendants as are enjoyed by
17 non-disabled persons," by "failing to provide ASL interpreters." *Id.* ¶¶ 62–64. Patterson "wants
18 to visit Six Flags Discovery Kingdom and Defendants' other amusement parks again in the near
19 future because he and his family enjoy amusement parks," *id.* ¶ 66, but is deterred from visiting
20 defendants' parks due to the alleged discrimination he has faced, *id.* ¶¶ 29, 69.
21  After making repeated attempts to receive accommodation, Patterson filed this action
22 under Title III of the ADA and the Unruh Act. Compl., ECF No. 1. The parties engaged in
23 settlement discussions, which ended in an impasse on September 21, 2022. Stip. & Order, ECF
24 No. 26. Patterson then filed the operative complaint, FAC, and defendants moved to dismiss both
25 of Patterson's claims, Mot. Patterson opposed, Opp'n, ECF No. 29, and defendants replied,
26 Reply, ECF No. 31. The court submitted the matter without hearing. *See* Min. Order, ECF No.
27 33.

## II. STANDING

Defendants move to dismiss Patterson's ADA claim for lack of Article III standing under Federal Rule of Civil Procedure 12(b)(1). *See* Mot. at 13–24.

### A. Legal Standard

A motion to dismiss under Federal Rule of Civil Procedure 12(b)(1) contests the court's subject matter jurisdiction. *See Savage v. Glendale Union High Sch.*, 343 F.3d 1036, 1039–40 (9th Cir. 2003). Standing is a necessary component of the court's exercise of subject matter jurisdiction; if a plaintiff lacks standing, the court lacks jurisdiction. *Cetacean Cmty. v. Bush*, 386 F.3d 1169, 1174 (9th Cir. 2004).

To demonstrate standing, a plaintiff must (1) have suffered a concrete and particularized injury-in-fact, which is actual or imminent, not conjectural or hypothetical; (2) there must be a causal connection between the injury and the defendant's conduct; and (3) it must be likely that the injury will be redressed by a favorable decision. *Pritikin v. Dep't of Energy*, 254 F.3d 791, 796–97 (9th Cir. 2001). Additionally, "to establish standing to pursue injunctive relief, which is the only relief available to private plaintiffs under the ADA, [a plaintiff] must demonstrate a real and immediate threat of repeated injury in the future." *Chapman v. Pier 1 Imports (U.S.) Inc.*, 631 F.3d 939, 946 (9th Cir. 2011) (citation and internal marks omitted). "The party asserting federal jurisdiction bears the burden" of demonstrating he has standing at every stage of litigation. *Krottner v. Starbucks Corp.*, 628 F.3d 1139, 1141 (9th Cir. 2010).

### B. Analysis

Defendants argue Patterson does not have standing because he has not alleged an injury in fact. Mot. at 14. "Rule 12(b)(1) jurisdictional attacks can be either facial or factual." *White v. Lee*, 227 F.3d 1214, 1242 (9th Cir. 2000). "In a facial attack, the challenger asserts that the allegations contained in a complaint are insufficient on their face to invoke federal jurisdiction." *Safe Air for Everyone v. Meyer*, 373 F.3d 1035, 1039 (9th Cir. 2004). "[I]n a factual attack, the challenger disputes the truth of the allegations that, by themselves, would otherwise invoke federal jurisdiction." *Id.* "[A] district court resolves a facial attack as it would a motion to

dismiss under Rule 12(b)(6): Accepting the plaintiff's allegations as true and drawing all reasonable inferences in the plaintiff's favor, the court determines whether the allegations are sufficient as a legal matter to invoke the court's jurisdiction." *Leite v. Crane Co.*, 749 F.3d 1117, 1121 (9th Cir. 2014).

Here, defendants bring a facial attack by arguing Patterson has "failed to allege an injury in fact." Mot. at 14; Reply at 4. Thus, the court accepts Patterson's allegations as true and draws all reasonable inferences in his favor to determine whether the allegations are sufficient to invoke the court's jurisdiction. *See Leite*, 749 F.3d at 1121. Applying this standard, the court finds Patterson has sufficiently alleged an injury in fact and has standing to bring this case.

First, defendants argue the first amended complaint does not allege Patterson has requested "a timely accommodation" in accordance with the Park's Safety & Accessibility Guide. Mot. at 15. Specifically, defendants claim Patterson contacted the wrong office and did not make requests for accommodation at least 7 days in advance of visiting the Park. *Id.* at 16. Thus, defendants argue, Patterson has not alleged past injury or likely future injury because he did not make "a good faith attempt . . . to make a timely future request for accommodation." *Id.*

The court disagrees. The first amended complaint alleges Patterson made multiple attempts to request ASL interpreters. *See* FAC. Assuming without deciding Patterson must comply with defendants' policy set out in the Accessibility Guide in order to satisfy standing, some of Patterson's requests were not in accordance with the policy because they were untimely or because Patterson contacted the wrong office, *see id.* ¶¶ 21–22, 25–26, 47. But defendants denied Patterson's timely request for ASL interpreters for six of his future planned visits despite Patterson's calling the number or office identified in the policy. *Id.* ¶¶ 46–47. Specifically, the first amended complaint alleges Patterson called the operations office in accordance with the Park's policy on September 6, 2021, and requested an ASL interpreter for planned future visits on September 25, October 2, October 16, October 31, November 13 and November 27, 2021— all more than 7 days in the future. *Id.* ¶¶ 47–48. In response to his request, a guest relations manager named Mercedes told Patterson flatly that "Six Flags Discovery Kingdom does not provide ASL interpreters for its Deaf guests." *Id.* ¶¶ 48–50.

When Patterson visited the Park without access to an interpreter, "he was excluded and denied the benefits of the aural information of the many shows, productions, and animal experiences . . . on the basis of his deafness" and had no access to "periodic announcements made over the loudspeakers during his stay." *Id.* ¶ 23. While Patterson made his initial visit after registering his first untimely request for an interpreter, *id.* ¶¶ 20–23, Patterson did not need to make further futile gestures by going to the Six Flags Discovery Kingdom yet again after his timely requests for an ASL interpreter were denied, *see Ervine v. Desert View Reg'l Med. Ctr. Holdings, LLC*, 753 F.3d 862, 867 (9th Cir. 2014) ("Title III of the ADA explicitly provides that it does not require a person with a disability to engage in a *futile gesture* if such person has actual notice that a person or organization . . . does not intend to comply with the ADA." (emphasis in original) (citation and internal marks omitted)). Here, Mercedes explicitly told Patterson "as a matter of policy and practice," the Park does not "provide ASL interpreters for any guest, even if requested 7 days in advance." FAC ¶ 49. Due to defendants' refusal to provide accommodations in the form of a sign language interpreter, Patterson alleges he suffered discrimination and was denied the "equal access to and enjoyment of services offered by Defendants" he was entitled to. *Id.* ¶ 62. Thus, Patterson has sufficiently alleged injury in fact. *See, e.g.*, *Gough v. PeaceHealth St. Joseph Med. Ctr.*, No. 12-346, 2013 WL 1148748, at *4 (W.D. Wash. Mar. 19, 2013) (for standing purposes, "communication barrier need only interfere with the plaintiff's 'full and equal enjoyment' of the facility or service it offers").

Second, defendants argue Patterson has "not made factual allegations that demonstrate a real and immediate threat of repeated injury." Mot. at 20. The court again disagrees. The Ninth Circuit has held "an ADA plaintiff can establish standing to sue for injunctive relief either by demonstrating deterrence, or by demonstrating injury-in-fact coupled with an intent to return to a noncompliant facility." *Chapman*, 631 F.3d at 944. Here, Patterson has alleged both. Specifically, Patterson alleges he is "deterred from visiting Defendants' parks" because of the discrimination he faced in the form of defendants' refusal to provide a sign language interpreter. FAC ¶ 69. He has also indicated his intent and desire to return. Patterson avers he lives near the Park, Opp'n at 7; FAC ¶¶ 10–11, his family "frequently visit[s] and enjoy[s] amusement parks

7

together as a family activity," FAC ¶¶ 18, 66, he has visited the Park before, *id.* ¶ 23, and he wants to visit the Park and defendants' other parks in the future, *id.* ¶¶ 67–68.  He had developed "concrete plans" to visit the park and had purchased annual membership passes for his family. *See id.* ¶¶ 20, 67.  Patterson's purchase of membership passes rather than individual single-entry tickets for his family supports a reasonable inference he and his family planned to visit the Park again in the future.  In general, guests to amusement parks do not purchase annual membership passes unless they plan to visit the park frequently enough so as render the price reasonable. Thus, the court finds Patterson has established injury in fact.  *See C.R. Educ. & Enf't Ctr. v. Hosp. Properties Tr.*, 867 F.3d 1093, 1101 (9th Cir. 2017) ("[U]nder the ADA, once a plaintiff has actually become aware of discriminatory conditions existing at a public accommodation, and is thereby deterred from visiting or patronizing that accommodation, the plaintiff has suffered an injury.").

Accordingly, defendant's motion to dismiss for lack of standing is denied.

### III. MOTION TO DISMISS FOR FAILURE TO STATE A CLAIM

#### A. Legal Standard

A party may also move to dismiss for "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6).  The motion may be granted if the complaint lacks a "cognizable legal theory" or if its factual allegations do not support a cognizable legal theory. *Godecke v. Kinetic Concepts, Inc.*, 937 F.3d 1201, 1208 (9th Cir. 2019) (quoting *Balistreri v. Pacifica Police Dep't*, 901 F.2d 696, 699 (9th Cir. 1988)).  The court assumes all factual allegations are true and construes them "in the light most favorable to the nonmoving party." *Steinle v. City of San Francisco*, 919 F.3d 1154, 1160 (9th Cir. 2019) (quoting *Parks Sch. of Bus., Inc. v. Symington*, 51 F.3d 1480, 1484 (9th Cir. 1995)).  If the complaint's allegations do not "plausibly give rise to an entitlement to relief," the motion must be granted.  *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009).

#### B. Analysis

Defendants argue Patterson has "failed to state any claims." Mot. at 24.  Title III of the ADA provides "[n]o individual shall be discriminated against on the basis of disability in the full

and equal enjoyment of the goods, services, facilities, privileges, advantages, or accommodations of any place of public accommodation by any person who owns, leases (or leases to), or operates a place of public accommodation." 42 U.S.C. § 12182(a). To prevail under Title III, "a plaintiff must show that: (1) he is disabled within the meaning of the ADA; (2) the defendant is a private entity that owns, leases, or operates a place of public accommodation; and (3) the plaintiff was denied public accommodations by the defendant because of his disability." *Arizona ex rel. Goddard v. Harkins Amusement Enters., Inc.*, 603 F.3d 666, 670 (9th Cir. 2010) (citing *Molski v. M.J. Cable, Inc.*, 481 F.3d 724, 730 (9th Cir. 2007)).

The parties do not dispute Patterson is an individual with a disability or that defendants own a place of public accommodation. *See generally* FAC; Mot.; 42 U.S.C. § 12102. Thus, the remaining question is whether Patterson plausibly alleges a denial of public accommodation based on his disability.

Under Title III, discrimination includes failure to take necessary steps to ensure individuals with disabilities are not "excluded . . . or otherwise treated differently . . . because of the absence of auxiliary aids and services . . . ." 42 U.S.C. § 12182(b)(2)(A)(iii). The ADA defines "auxiliary aids and services" to include "qualified interpreters or other effective methods of making aurally delivered materials available to individuals with hearing impairments." 42 U.S.C. § 12103. Patterson alleges he made timely requests under defendants' stated policy for an ASL interpreter for his planned future visits. *See* FAC ¶ 47. Patterson alleges he called the operations office more than 7 days before his planned trips and requested ASL interpreters for those trips. *Id.* ¶¶ 46–48. Despite his requests, Patterson was informed the Park does not provide ASL interpreters; he was told "no ASL interpreter would be provided by [the Park] for any of his future planned visits, because as a matter of policy and practice they do not provide ASL interpreters for any guest . . . ." *Id.* ¶¶ 48–49. Moreover, Patterson requires ASL interpreters to not only enjoy Park attractions "that require narration to fully enjoy," but also to communicate with ride operators and other staff members about safety precautions and other concerns. *Id.*

¶ 19. By not having access to an ASL interpreter, Patterson sufficiently alleges he was denied access to a public accommodation based on his disability.[5]

The court denies defendant's motion to dismiss for failure to state a claim.

## IV. SUPPLEMENTAL JURISDICTION

### A. Legal Standard

When a district court has original jurisdiction over a case, it can also exercise supplemental jurisdiction over factually related claims. 28 U.S.C. § 1367(a) ("[T]he district courts shall have supplemental jurisdiction over all other claims that are so related to claims in the action within such original jurisdiction that they form part of the same case or controversy . . . ."). "Nonfederal claims are part of the same 'case' as federal claims when they derive from a common nucleus of operative fact and are such that a plaintiff would ordinarily be expected to try them in one judicial proceeding." *Kuba v. 1-A Agr. Ass'n*, 387 F.3d 850, 855–56 (9th Cir. 2004) (quoting *Trs. of the Constr. Indus. & Laborers Health & Welfare v. Desert Valley Landscape & Maint.*, Inc., 333 F.3d 923, 925 (9th Cir. 2003)). Under section 1367, a district court may decline to exercise supplemental jurisdiction over a state law claim if the claim 1) "raises a novel or complex issue of State law," 2) "substantially predominates" over the federal claims, or 3) "in exceptional circumstances, there are other compelling reasons for declining jurisdiction." 28 U.S.C. § 1367(c)(1).

### B. Analysis

A violation of the ADA constitutes a violation of the Unruh Act. Cal. Civ. Code § 51(f). Defendants argue the court should decline to exercise supplemental jurisdiction over Patterson's Unruh Act claim because it raises novel and difficult questions of state law, predominates over the federal claim and there are compelling reasons to decline jurisdiction. Mot. at 28.[6]

---

[5] Defendants err by arguing Patterson did not engage in any interactive process, Mot. at 25, because Title III does not require him to do so. *See Tauscher v. Phoenix Bd. of Realtors, Inc.*, 931 F.3d 959, 964 (9th Cir. 2019) ("The ADA does not make [the] 'interactive process' requirement applicable to public accommodations and services.").

[6] Defendants' brief in support of their motion to dismiss exceeds by 5 pages the page limit set by this court's standing order. *See* Standing Order at 3, ECF No. 3-1. While the court will

10

1  Defendants do not elaborate and so do not provide compelling reasons for declining jurisdiction,
2  as discussed further below.  *See generally* Mot.; Reply.  Rather, defendants simply claim
3  "Plaintiff will no doubt seek an unspecified amount of damages, should the matter proceed to
4  trial," Mot. at 28, and cite to various examples of courts that declined to exercise supplemental
5  jurisdiction over claims under the Unruh Act, *id.* at 28–30.  Defendants do not explain how these
6  other cases are relevant to the specific facts of this case.  In their reply, defendants contend
7  Patterson does not specify "the number of violations [he] asserts under the Unruh Act," making it
8  "impossible for Defendant to determine the number of violations alleged or the availability of
9  statutory damages based on novel and complex California law."  Reply at 9.
10      First, the court does not find, and defendants do not show, Patterson's claim raises a novel
11  and difficult question of state law or predominates over his ADA claim.  The Unruh Act "adopted
12  the full expanse of the ADA," meaning "the same standards for liability apply under both Acts."
13  *Lentini v. Cal. Ctr. for the Arts, Escondido*, 370 F.3d 837, 847 (9th Cir. 2004).  Defendants do not
14  point to new developments in California law that would raise a novel and complex question in
15  this case or explain how the Unruh claim predominates over the ADA claim.  *See generally* Mot.;
16  Reply.  Rather, defendants appear to suggest Patterson's state claim raises a novel and difficult
17  question of state law and predominates over the federal claim because courts do not agree on
18  whether the Unruh Act provides for daily damages.  *See* Mot. at 29.  Nowhere in the complaint
19  does Patterson seek daily damages.  *See generally* FAC.  The court also notes "the mere fact that
20  the state claims allow for the recovery of monetary damages, whereas the ADA provides for
21  injunctive relief only, does not compel the conclusion that the state claims 'substantially
22  predominate' over the federal claim." *Moore v. Dollar Tree Stores Inc.*, 85 F. Supp. 3d 1176,
23  1194 (E.D. Cal. 2015).  Moreover, judicial economy, convenience and fairness to litigants all
24  favor exercising supplemental jurisdiction because the state law claim involves identical facts to
25  the federal claim.  *See City of Chicago v. Int'l Coll. of Surgeons*, 522 U.S. 156, 173 (1997).

---

address the arguments raised by defendants in those 5 pages, defendants can expect that future noncompliance with the court's orders will result in sanctions.

Second, the court does not find any exceptional circumstances that warrant dismissal of Patterson's Unruh claim. Unlike construction-related accessibility claims, this case does not raise the comity concerns identified by the Ninth Circuit in *Arroyo v. Rosas*, 19 F.4th 1202 (9th Cir. 2021). There, the court found "exceptional circumstances" surrounding "ADA-based Unruh Act cases" in federal court because the case involved construction-related accessibility claims. *See id.* at 1212–14. The Ninth Circuit considered the record regarding a surge of ADA/Unruh Act case filings in federal district courts after the California Legislature imposed certain procedural restrictions aimed at addressing abusive litigation in construction-related cases. *Id.* at 1206–07, 1212. It concluded by agreeing with the district court's finding that litigants in that type of case had been evading the limits set by California by filing in federal court, thus creating a "converse comity concern" where the "retention of supplemental jurisdiction over ADA-based Unruh Act claims threatens to substantially thwart California's carefully crafted reforms in this area and to deprive the state courts of their critical role in effectuating the policies underlying those reforms." *Id.* at 1213. Unlike *Arroyo*, this case does not involve construction-related accessibility claims, nor do defendants point to procedural restrictions Patterson may be seeking to avoid by bringing an Unruh Act claim with ADA claims in federal court.

## V.  CONCLUSION

For the reasons above, the court **denies defendants' motion to dismiss**.

This order resolves ECF No. 28.

IT IS SO ORDERED.

DATED: January 5, 2023.

CHIEF UNITED STATES DISTRICT JUDGE