UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| Melvin Patterson, | No. 2:21-cv-02398-KJM-AC |
| Plaintiff, | ORDER |
| v. | |
| Six Flags Theme Parks Incorporated, et al., | |
| Defendants. | |

In this disability discrimination action, the court has set a bench trial for September 24, 2024. In advance of the trial, plaintiff has filed a motion in limine to exclude defendants' expert testimony. The court takes the matter under submission without holding a hearing and for the reasons below, **grants** the motion.

**I.   BACKGROUND**

Plaintiff Melvin Patterson is deaf. First Am. Compl. (FAC) ¶ 1, ECF No. 27. He brings this action under Title III of the Americans with Disabilities Act and the California Unruh Civil Rights Act against defendants Six Flags Theme Parks, Inc., Six Flags Entertainment Corp., and Park Management Corp. (collectively, defendants). *See id.* ¶¶ 11–13, 70–91. Plaintiff alleges defendants discriminated against him by refusing to provide an American Sign Language (ASL) interpreter for planned visits to defendants' amusement park, Six Flags Discovery Kingdom in Vallejo, California. *See, e.g., id.* ¶¶ 4–5. After the dispositive motion deadline passed, the court

held a final pretrial conference on March 29, 2024. Mins. Final Pretrial Conf., ECF No. 50; *see also* Min. Order, ECF No. 46. As noted, a bench trial is set for September 24, 2024. Final Pretrial Order at 2, 7, ECF No. 51.[1]

In anticipation of the trial, plaintiff has moved in limine to exclude the testimony of defendants' retained expert, Robert F. Minnick, under Federal Rule of Evidence 702 and *Daubert v. Merrell Dow Pharmaceuticals*, *Inc.* (*Daubert I*), 509 U.S. 579 (1993). *See id.* at 3; Mot., ECF No. 47. Plaintiff argues Mr. Minnick is not qualified, his anticipated testimony is unreliable and unhelpful, his testimony contains pure conclusions of law, and he improperly offers opinions as to other witnesses' state of mind. *See generally* Mot.

Mr. Minnick is the president of a company that offers consulting, expert witness and other services "on how to use a structured approach to safety to get results." Minnick Rep. at 15, Mot. Ex. A, ECF No. 47-1. He previously worked as a technical director of safety and accessibility at Walt Disney Parks & Resorts in Florida, among other positions. *See id.* at 16. He holds a bachelor's degree in chemical engineering and an MBA. *Id.* at 17.

Mr. Minnick describes the following opinions in his report, which the court has numbered for ease of reference:[2]

(1) "After examining the documents listed [in my report], I do not find any evidence of discrimination by the defendant. I saw evidence of one Six Flags Guest Relations employee getting confused about their service offerings for persons with disabilities, but no intentional discrimination." Minnick Rep. at 6; Minnick Dep. 44:24–45:10, 73:17–18, Mot. Ex. B, ECF No. 47-2.[3]

---

[1] When citing page numbers on filings, the court uses the pagination automatically generated by the CM/ECF system unless noted otherwise.

[2] To the extent defendants argue Mr. Minnick could testify reliably about other topics, *see* Opp'n at 8–9, ECF No. 53, such testimony would be improper because it is outside the scope of his expert report, *see* Fed. R. Civ. P. 26(a)(2)(B) (an expert report must contain "a complete statement of all opinions the witness will express and the basis and reasons for them").

[3] For the deposition transcript, the court cites to the page numbers on the transcript itself and not to the pagination automatically generated by the CM/ECF system.

    (2)    "Requests for ASL interpreters are very rare at Six Flags Discovery Kingdom. . . . Since requests are so rare, it's not surprising to this expert that a seasonal employee such as Mercedes Wilson in the Six Flags Operations Office would be confused about the range of service offerings for the deaf or hard of hearing." Minnick Rep. at 6 (citation omitted); *see also* Minnick Dep. 60:2–5.

    (3)    "Melvin Patterson appears to be angling for a fight with Six Flags Discovery Kingdom after his first few frustrating phone calls and their refusal to refund him his season pass expenditure." Minnick Rep. at 11.

    (4)    "Park operations require [seven to fourteen days'] lead-time to understand and process the service request, contact a sign language contractor, schedule the ASL interpreter and respond to the Guest with an agreed-to meeting place." *Id.* at 12.

    (5)    "Same day service for a rare request is not a reasonable accommodation." *Id.*; *see also* Minnick Dep. 56:3–7.

Plaintiff's motion in limine is fully briefed. *See generally* Opp'n; Reply, ECF No. 55. In response to defendants' request at the final pretrial conference, the court resolves plaintiff's motion in limine in advance of the settlement conference before the assigned magistrate judge and before the first day of trial. *See* Final Pretrial Order at 3; Mins. Final Pretrial Conf.

## II. LEGAL STANDARDS

"A motion in limine is a procedural mechanism to limit in advance testimony or evidence in a particular area." *United States v. Heller*, 551 F.3d 1108, 1111 (9th Cir. 2009) (citation omitted). Although a threshold ruling on evidentiary issues such as the one before the court is "generally superfluous" in the context of a bench trial, *id.* at 1112, the court finds ruling on this matter now will conserve judicial resources and streamline the issues during the settlement conference and at trial, *see, e.g.*, *Parker v. BNSF Ry. Co.*, No. 14-00176, 2021 WL 4819910, at *2 (W.D. Wash. Oct. 15, 2021) ("[A]lthough threshold evidentiary rulings in a bench trial are generally superfluous, ruling on these motions will streamline the issues and save time."); *see also Ketab Corp. v. Mesriani & Assocs., P.C.*, 734 F. App'x 401, 410 (9th Cir. 2018) (unpublished) (district court does not abuse discretion by ruling on a motion in limine prior to a

1  bench trial).  The court issues its ruling on the motion in limine based on the record currently

2  before it.  Each ruling is made without prejudice and is subject to proper renewal, in whole or in

3  part, during trial.  *See United States v. Whittemore*, 776 F.3d 1074, 1082 (9th Cir. 2015) ("A

4  ruling on a motion *in limine* is not a final order . . . such rulings 'are by their very nature

5  preliminary.'" (quoting *Coursen v. A.H. Robins Co.*, 764 F.2d 1329, 1342 (9th Cir. 1985))).

6  　　　　　Expert testimony is admissible if the expert witness is qualified and if the witness's

7  testimony is relevant and reliable.  *See* Fed. R. Evid. 702; *Kumho Tire Co., Ltd. v. Carmichael*,

8  526 U.S. 137, 147 (1999); *Daubert I*, 509 U.S. at 589–92.  To determine whether an expert has

9  the appropriate qualifications, the court considers whether the expert offers some special

10 knowledge, skills, experience, training, or education on the subject matter of the testimony

11 contemplated.  *See* Fed. R. Evid. 702; *United States v. Hankey*, 203 F.3d 1160, 1168 (9th Cir.

12 2000).  To assess whether an expert's testimony is relevant, the court considers whether the

13 testimony "logically advances a material aspect of the proposing party's case."  *Daubert v.*

14 *Merrell Dow Pharms., Inc.* (*Daubert II*), 43 F.3d 1311, 1315 (9th Cir. 1995).  This is not "merely

15 a reiteration of the general relevancy requirement of Rule 402."  *Id.* at 1321 n.17.  The opinion

16 must speak "clearly and directly to an issue in dispute in the case."  *Id.*  Finally, to evaluate

17 whether expert testimony is reliable, the court considers whether "the knowledge underlying it

18 has a reliable basis in the knowledge and experience of the relevant discipline."  *Primiano v.*

19 *Cook*, 598 F.3d 558, 565 (9th Cir. 2010) (quoting *United States v. Sandoval-Mendoza*,

20 472 F.3d 645, 654 (9th Cir. 2006)).  "[T]he expert's bald assurance of validity is not enough."

21 *Daubert II*, 43 F.3d at 1316.  "It is the proponent of the expert who has the burden of proving

22 admissibility."  *Lust By & Through Lust v. Merrell Dow Pharms., Inc.*, 89 F.3d 594, 598 (9th Cir.

23 1996).

24 **III.　ANALYSIS**

25 　　　　　As a preliminary matter, defendants have shown Mr. Minnick is at least minimally

26 "qualified as an expert" under Rule 702 based on his experience and knowledge regarding ADA

27 compliance and accessibility in theme parks and other businesses from 2002 until today.  *See*

28 Minnick Rep. at 15–17; *see also* Minnick Dep. 9:23–12:22; Mot. at 4–5; Opp'n at 3–4.  His lack

1  of "granular" experience that might be more directly relevant to plaintiff's claims does not show
2  he is unqualified, though it could reduce the weight of his opinions at trial. *Maney v. Oregon*,
3  No. 20-00570, 2024 WL 1695083, at *9 (D. Or. Apr. 19, 2024) (collecting authority). Although
4  Mr. Minnick is qualified, his testimony is inadmissible.
5        To begin, opinions (1) and (5)—that there is no "evidence of discrimination by the
6  defendant" and that same-day interpretive services are not reasonable—are "inappropriate
7  subjects for expert testimony." *Aguilar v. Int'l Longshoremen's Union Loc. No. 10*,
8  966 F.2d 443, 447 (9th Cir. 1992). "It is well-established . . . that expert testimony concerning an
9  ultimate issue is not per se improper." *Hangarter v. Provident Life & Acc. Ins. Co.*,
10 373 F.3d 998, 1016 (9th Cir. 2004) (quoting *Mukhtar v. Cal. State Univ., Hayward*,
11 299 F.3d 1053, 1066 n.10 (9th Cir. 2002)); Fed. R. Evid. 704(a) ("An opinion is not objectionable
12 just because it embraces an ultimate issue."). However, "an expert witness cannot give an
13 opinion as to her legal conclusion, i.e., an opinion on an ultimate issue of law." *Hangarter*,
14 373 F.3d at 1016 (quoting *Mukhtar*, 299 F.3d at 1066 n.10). "[E]xpert testimony that consists of
15 legal conclusions is unhelpful and inadmissible." *Arjangrad v. JPMorgan Chase Bank, N.A.*,
16 No. 10-01157, 2012 WL 1890372, at *7 (D. Or. May 23, 2012). Mr. Minnick offers legal
17 conclusions—that there was no discrimination and offering same-day ASL interpretive service is
18 not reasonable. His testimony inappropriately goes to the ultimate issues of law and is therefore
19 inadmissible. Other district courts have excluded similar opinions in other ADA cases. *See, e.g.*,
20 *U.S. Equal Emp. Opportunity Comm'n v. MJC, Inc.*, No. 17-00371, 2019 WL 2992013, at *4
21 (D. Haw. July 9, 2019) (expert opinion on whether defendants "violated the ADA and whether
22 their conduct was malicious and/or reckless" inadmissible because these are ultimate legal
23 issues); *Stiner v. Brookdale Senior Living, Inc.*, 665 F. Supp. 3d 1150, 1171 (N.D. Cal. 2023)
24 (expert's opinion on whether defendant's "policies or practices are out of compliance with the
25 ADA and its regulations are improper legal conclusions").
26       Nor would opinions (1) and (5) "help the trier of fact to understand the evidence or to
27 determine a fact in issue." Fed. R. Evid. 702(a). As described in his report, opinions (1) and (5)
28 are based on Mr. Minnick's review of discovery production and evidence in this case, including

depositions, responses to interrogatories, and pleadings. Minnick Rep. at 7; Minnick Dep. 46:21–23. He does not explain how he used his expertise to evaluate that evidence. For that reason, it is unclear what helpful testimony Mr. Minnick could provide that is outside "the common knowledge of the average layman." *United States v. Vallejo*, 237 F.3d 1008, 1019 (9th Cir. 2001), *amended by* 246 F.3d 1150 (9th Cir. 2001); *see also Daubert I*, 509 U.S. at 590 ("[T]he word 'knowledge' connotes more than subjective belief or unsupported speculation.").

Next, opinions (2) and (3) are about another person's state of mind. Questions of state of mind are properly for the trier of fact. *See MJC*, 2019 WL 2992013, at *5 (collecting cases). Mr. Minnick therefore cannot testify at trial "that a seasonal employee such as Mercedes Wilson in the Six Flags Operations Office would be confused about the range of service offerings for the deaf or hard of hearing." Minnick Rep. at 6; *see also* Minnick Dep. 59:7–8, 60:4–5. Nor may Mr. Minnick testify at trial that plaintiff "appears to be angling for a fight with Six Flags Discovery Kingdom after his first few frustrating phone calls and their refusal to refund him his season pass expenditure." Minnick Rep. at 11.

Opinion (2) also lacks any analytical foundation. Mr. Minnick provides no analysis on how rare the requests for ASL interpreters are—for example, on average, how many requests do defendants receive per week, month, or even year? Nor does he explain or know how much time it would take to find an ASL interpreter in the area, such that same day requests or requests made less than seven days in advance cannot be reasonably honored.

What remains, then is opinion (4), i.e., that "[p]ark operations require [seven to fourteen days'] lead-time to understand and process the service request, contact a sign language contractor, schedule the ASL interpreter and respond to the Guest with an agreed-to meeting place." Minnick Rep. at 12. Mr. Minnick does not explain the basis of this opinion or what method he used to reach it. He does not describe any research. Nor does he know how many days it takes for an average or typical amusement park, let alone these particular defendants, to obtain an in-person sign language interpreter or even an interpreter via the use of Video Remote Interpreting services. Minnick Dep. 27:14–29:1, 33:4–13, 34:13–17, 40:25–41:12. Nor does he testify about the industry standards for the amount of time needed to honor requests for ASL interpreters.

Rather, he explains that Disney, his former employer, "asks for two-week notice" because that particular theme park attracts a lot of international guests, and it would take time to find appropriate foreign language sign language interpreters—for example, a British sign language interpreter or a Chinese sign language interpreter. *Id.* at 35:17–36:1, 57:6–17. He also testified vaguely at his deposition that the relevant standard "depends," and he said theme parks "need to establish their policy . . . based on availability of services around the park[.]" *Id.* at 71:13–24. Although he states different theme parks have different policies "based on their experience," *id.* at 34:16–17, he does not appear to know what defendants' experience is and why defendants' policies are reasonable, if they are, in light of those experiences. This opinion too is unreliable.

### IV. CONCLUSION

"[A]n expert, whether basing testimony upon professional studies or personal experience, [must] employ[] in the courtroom the same level of intellectual rigor that characterizes the practice of an expert in the relevant field." *Kumho Tire*, 526 U.S. at 152. Based on the record before it, the court cannot conclude Mr. Minnick's opinions meet that standard of intellectual rigor.

For the reasons above, the court **grants** plaintiff's motion in limine to exclude Mr. Minnick's expert testimony. The hearing set for May 17, 2024, is hereby **vacated.**

This order resolves ECF No. 47.

IT IS SO ORDERED.

DATED: May 9, 2024.

CHIEF UNITED STATES DISTRICT JUDGE