UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

Melvin Patterson,

Plaintiff,

v.

Six Flags Theme Parks, Inc., et al,

Defendants.

No. 2:21-cv-02398-KJM-AC

ORDER AND

PERMANENT INJUNCTION

On November 15, 2024, the court found Six Flags Theme Parks Inc., Six Flags Entertainment Corp., and Park Management Corp. (collectively, "Six Flags") liable for violations of Title III of the Americans with Disabilities Act (ADA), 42 U.S.C. §§ 12181–12189, and California's Unruh Civil Rights Act, Cal. Civ. Code § 51, for failing to accommodate plaintiff Melvin Patterson's hearing disability. *See generally* ECF No. 84. The court granted permanent injunctive relief and ordered the parties to meet and confer on the scope of the injunction, Patterson to submit a proposed injunction, Six Flags to file a response and Patterson a reply. *See id.* at 19–20. The parties have made these filings. *See* Pl.'s Status Rep., ECF No. 86; Pl.'s Proposed Inj., ECF No. 85; Defs.' Status Rep. & Opp'n (Opp'n), ECF No. 87; Reply, ECF No. 88. Having reviewed them, the court orders as follows.

/////

## I. BACKGROUND

Following a bench trial, the court found Six Flags failed to accommodate Patterson's hearing disability in violation of the ADA and the Unruh Act on nine separate occasions in 2021 when he expressed a desire to visit Six Flags Discovery Kingdom and was not provided with an American Sign Language (ASL) interpreter. *See* Order (Nov. 15, 2024) at 15. For each one of these violations the court found Six Flags had failed to properly train its employees at Discovery Kingdom and at its national call center on arranging ASL interpreters for prospective guests. *See id.* at 13–14. The court found Six Flags staff did not properly communicate ASL interpreter requests because employees at the national call center were not allowed to communicate with employees at Discovery Kingdom and employees at the national call center were not required to escalate accommodation requests to their supervisors. *See id.* The court found Patterson was entitled to a permanent injunction and ordered him to submit a proposed injunction addressing the following five issues:

- A definition of "good faith efforts" at accommodation and how specifically Six Flags will implement them.
- Provisions to require comprehensive staff training on ADA compliance and handling of ADA interpreter requests.
- Provisions requiring forwarding of customer requests to appropriate staff members to secure sign language interpreter services.
- Provisions to establish contracts with ASL interpreter services to ensure the timely provision of interpreters.
- Provisions to conduct internal audits for ADA compliance and accommodation practices.

*See id.* at 20. Patterson has now submitted a proposed injunction outlining in detail how Six Flags will retrain its staff to properly handle requests from those with hearing disabilities. *See generally* Pl.'s Proposed Inj.

/////

## II. OBJECTIONS

Six Flags has raised three objections to Patterson's proposed injunction. *See* Opp'n at 4–6. First, Six Flags argues Patterson's proposed requirement that Six Flags offer Video Remote Intepreting (VRI) is not a requirement mandated by the ADA nor was it referenced in the court's Findings of Fact and Conclusions of Law. *See id.* at 4–5. Second, Six Flags argues Patterson's proposed injunction is overbroad because it attempts to bind Six Flags parks that are not covered by the case before the court. *See id.* at 5–6. And third, Six Flags argues Patterson's proposed injunction is overbroad because it is not tailored to his injuries as found in the Findings of Fact and Conclusions of Law and is thus more burdensome to the defendant than necessary for granting complete relief to Patterson. *See id.* at 6.

In addition to its objections, Six Flags has submitted its own proposed injunction and a red-lined version of Patterson's proposed injunction that modifies, deletes, or inserts language. *See* Defs.' Proposed Inj., ECF No. 87-1; Defs.' Redlines, ECF No. 87-2.

The court declines all of Six Flags' proposed changes unaccompanied by legal justification unless otherwise explained below. Further, the court construes Six Flags' objections as two instead of three: one, that Patterson's proposed injunction binds parties not before the court and, two, that Patterson's proposed injunction is overbroad because it grants more relief than is necessary to cure Patterson's injury. The court addresses each in turn.

### A. Parties Before the Court

Six Flags argues Patterson's injunction is overly broad because it seeks to enjoin parties not before the court, including Six Flags parks other than Discovery Kingdom. *See* Opp'n at 6. In its redlines of Patterson's injunction, presumably based on the same argument, Six Flags opposes successors in interest to Six Flags being subjected to the injunction. *See* Defs.' Redlines at 2. Six Flags makes this argument with reference to the Ninth Circuit's decision in *Zepeda v. United States Immigration & Naturalization Service*, in which the Circuit determined a district court needs personal jurisdiction and subject matter jurisdiction over the parties to enforce an injunction and the district court must, therefore, "tailor the injunction to affect only those persons over which it has power." 753 F.2d 719, 727 (1983).

As Patterson points out, the court has personal jurisdiction over Six Flags Entertainment Corporation as it is a defendant in this case. *See* Reply at 7. Thus, all of its parks could potentially be enjoined. *See id.* (citing *Zepeda*, 753 F.2d at 727 (holding injunctions may bind "parties to the action" and "persons in active concert or participation with [the parties]")). Further, Six Flags misreads *Zepeda*. In that case, the Circuit was addressing a preliminary injunction in a case in which the plaintiff had not yet obtained certification of a class. 753 F.2d at 727–28. The preliminary injunction could not, therefore, affect would-be class members as they were not yet properly before the court. *See id.* Clearly, a court can enjoin those who are "in active concert or participation" with Six Flags under Rule 65. *See* Fed. R. Civ. P. 65(d)(2)(C). A court can also enjoin successors in interest. *See E. & J. Gallo Winery v. Gallo Cattle Co.*, 967 F.2d 1280, 1298 (9th Cir. 1992) (citing *Regal Knitwear v. NLRB*, 324 U.S. 9, 14–15 (1945)). The court finds Patterson's proposed injunction does not improperly enjoin parties under Rule 65.

**B. Scope of the Injunction**

Six Flags argues Patterson's proposed injunction is overbroad because it is more burdensome than necessary to provide Patterson with complete relief. *See* Opp'n at 6 (citing *Epic Games v. Apple*, 73 F.4th 785, 787 (M. Smith, J. concurring) (citing *Califano v. Yamasaki*, 442 U.S. 682, 702 (1979))). As noted, Six Flags argues the proposed injunction is overbroad because it mandates Six Flags offer VRI services even though the court did not reference VRI in its Findings of Fact and Conclusions of Law. *See id.* at 4–5. Six Flags also argues Patterson's proposed injunction is overbroad because it enjoins all of Six Flags' parks when Patterson's injuries only stemmed from his interactions with Six Flags' staff at Discovery Kingdom and the national call center. *See id.* at 6.

For VRI, while the court did not reference this particular service in its Findings of Fact and Conclusions of Law, the court did discuss Patterson's inability to understand messages over the loudspeakers when he went to Six Flags. *See* Order (Nov. 15, 2024) at 4. The court also noted Six Flags Discovery Kingdom's current policies continue to pose safety problems for Patterson if he cannot obtain a translator, as he cannot hear important safety messages over the loudspeakers. *See id.* at 18. Further, as Patterson points out, the court asked Patterson to

specifically address what constitutes a "good faith effort" by Six Flags to provide accommodations for guests who fail to request an ASL interpreter seven days in advance of their trip to Discovery Kingdom. *See* Reply at 11–12; Order (Nov. 15, 2024) at 20. An accommodation through provision of VRI is an example of one such good faith effort. *See* Reply at 12. While as Six Flags points out, the ADA does not expressly mandate providing VRI services, *see* Opp'n at 5 (citing *Updike v. Multnomah County*, 870 F.3d 939, 956, 958 (9th Cir. 2017)), it does not bar them either, *see* Reply at 12 (citing 42 U.S.C. § 12103(1)(A) (contemplating a variety of "auxiliary aids and services")). Instead, as Patterson points out, VRI is one of the accommodations a place of public accommodation reasonably can provide to visitors with hearing disabilities to meet ADA requirements. *See* Reply at 12. Further, making VRI available responds to the scope of Patterson's injury, as he visited Discovery Kingdom without the aid of an interpreter and could not understand the safety messages Six Flags made over the loudspeakers. *See* Order (Nov. 15, 2024) at 4. Patterson's proposed VRI requirement is within the scope of the injunction the court has granted against Six Flags.

Six Flags is on better ground when it argues an injunction over all of its parks would be overly broad as it would be more burdensome than necessary to provide Patterson with complete relief. Opp'n at 6. The injury Patterson experienced was due to employees at the national call center and at Six Flags Discovery Kingdom failing to provide him with accommodations on the nine occasions he desired to visit Discovery Kingdom. *See generally* Order (Nov. 15, 2024). Patterson argues the injunction should apply to all of Six Flags' parks because each park has similar policies as evidenced by the trial testimony of Jeremey Bushek, Six Flags' national call center manager. *See* Reply at 5–7. Patterson also argues the injunction should be applied to all of Six Flags' parks because he was a Gold Pass member and could have gone to any of the parks. *See id.* at 7. But there is no evidence he experienced an injury at any of the other parks. In fact, the one-time Patterson planned a visit to a Six Flags Park other than Discovery Kingdom—a proposed trip to Magic Mountain in the summer of 2024—Six Flags provided him with accommodations. *See* Order (Nov. 15, 2024) at 8. The court **sustains** Six Flags' objection to Patterson's proposed injunction applicable to all of its parks. The injunction the court approves

will apply only to Six Flags Discovery Kingdom and the national call center's interactions with guests seeking accommodations at Six Flags Discovery Kingdom.

## III. INJUNCTION

The court approves a permanent injunction against Six Flags Discovery Kingdom in the form that follows:

### A. Definitions

**1. Defendants:**

**a**. Six Flags Theme Parks, Inc.

**b**. Six Flags Entertainment Corporation.

**c**. Park Management Corporation.

**d**. Any parent, subsidiary, or affiliated entities involved in operating or managing Six Flags Discovery Kingdom; providing guest services; operating or staffing the national call center; processing accommodation requests at Discovery Kingdom or at the national call center; training Discovery Kingdom or call center staff; and developing or implementing accessibility policies at either, provided they are served with this Order.

**e.** Any successor entities to any of the above.

**2.** **ASL**: American Sign Language

**3.** **VRI:** Video Remote Interpreting services providing real time interpreting through high quality audio and video technology.

**4.** **Park Operations Office**: The designated department or team within Six Flags Discovery Kingdom responsible for coordinating guest services, including interpreter arrangements.

**5.** **Public-Facing Staff:** Employees at Discovery Kingdom or at the national call center who directly interact with guests (e.g., customer service representatives, call center staff, ticket booth personnel, guest relations employees).

**6.** **Good Faith Efforts:** Genuine attempts to secure and provide accommodations, demonstrated through:

**a**. Contacting multiple interpreter agencies within 24 hours of receiving a request.

**b**. Maintaining detailed records of all attempts to secure interpreters, including dates, times, and outcomes of each contact.

/////

**c**. Proactively communicating with guests about the status of their requests and any challenges encountered.

**d**. Exploring and offering appropriate alternative accommodations if an interpreter cannot be secured.

**e**. Implementing escalation procedures when initial attempts are unsuccessful.

**f**. Maintaining relationships with multiple interpreter agencies to increase the likelihood of securing services. And,

**g**. Documenting all steps taken and decisions made throughout the process.

These efforts must reflect a genuine commitment to providing effective communication and should demonstrate reasonable diligence in pursuing all available options to meet the guest's needs.

7. **Park Visit:** The duration of a guest's presence at Six Flags Discovery Kingdom during operating hours on a given day.

8. **Comprehensive Interpreter Services:** ASL interpretation covering all aspects of a Park Visit at Six Flags Discovery Kingdom, including safety instructions, show narratives, ride information, dining interactions, and guest services.

9. **Emergency Situations:** Urgent circumstances requiring immediate communication, such as safety or medical emergencies, when an on-site interpreter is not immediately available.

**B. Notice, Scope and Applicability**

This Order applies to Discovery Kingdom and Six Flags' national call center operated by Defendants (including any parent, subsidiary, or affiliated entities) as well as officers, agents, servants, employees, attorneys, and all persons in active concert or participation with Defendants at the national call center or at Discovery Kingdom who have actual notice of this Order pursuant to Rule 65 of the Federal Rules of Civil Procedure. Defendants are responsible for providing actual notice of this Order to all officers, agents, servants, employees, attorneys and all persons in

/////

/////

/////

/////

/////

active concert or participation with Defendants at the national call center or at Discovery Kingdom.

### C. Required Actions

#### 1. Website Accessibility

The Six Flags Discovery Kingdom website shall be updated to include:

**a.** An "Attraction Accessibility" link prominently under "Plan Your Visit."

**b**. An online request form dedicated to ASL interpreter services.

**c**. The international sign language symbol linking to the request form.

**d**. A dedicated email address for ASL interpreter requests.

**e.** A dedicated telephone phone number for trained staff who can assist with ASL requests.

**f**. Clear instructions explaining:

**i**. How to request an interpreter.

**ii**. Expected response times.

**iii.** Required information for requests.

**iv.** Available alternative communication methods.

**v.** Availability of VRI for emergencies.

**vi.** The scope of comprehensive interpreter services.

#### 2. ASL Service Request Processing

**a. General Requirements for all requests:**

**i**. Acknowledge receipt within 24 hours of the next business day.

**ii**. Document the request in a centralized tracking system (e.g., Salesforce) that is regularly maintained to track ASL interpreter service requests.

**iii.** Forward the request to the Park Operations Office of Six Flags Discovery Kingdom.

**iv.** Each guest requesting ASL interpreter services shall be assigned a single point of contact (POC) to ensure consistent communication. If the assigned POC is unavailable, a designated backup contact at the park shall promptly assist the guest and have equivalent authorization to address the request. Defendants shall maintain updated backup contact information to avoid delays.

**v.** Document all communications in a centralized system.

**vi.** Follow established escalation procedures, if needed, to process a request for ASL interpreter services.

**b. Requests Made 7 or More Days in Advance:**

**i**. Confirm interpreter availability within 3 business days (absent extenuating circumstances not attributable to defendants).

**ii**. Defendants must demonstrate good faith efforts in securing interpreter services, including attempting to schedule with multiple agencies if the first attempt is unsuccessful.

**iii.** Provide written confirmation to the guest when scheduled.

**iv.** Provide written communication until service delivery.

**v.** Confirm the scope of requested services.

**c. Requests Made Less than 7 Days in Advance:**

**i**. Attempt to secure an interpreter immediately.

**ii**. Inform the guest of availability within 24 hours of the next business day.

**iii.** Document all good faith efforts to obtain interpreter services through more than one ASL interpreter agency, including all attempts to secure services and alternative solutions explored.

**iv.** Escalate to a supervisor for priority handling.

**v.** Offer VRI as an emergency backup.

**d. Handling Multiple Contact Attempts by the Same Guest:**

**i**. Identify and consolidate repeat requests.

**ii**. Prioritize handling for guests with multiple attempts.

**iii.** Require supervisor review of repeat requests.

**e. Interdepartmental Communication**

**i**. Ensure real-time information sharing between national call center and Discovery Kingdom.

**ii**. Establish clear protocols for transferring requests.

**iii.** Designate contacts at each facility with backups for urgent situations.

/////

/////

/////

**f. Scope of Interpreter Services During Discovery Kingdom Visits**

**i**. If an in-person interpreter is provided, they shall be available to interpret all communications throughout the guest's visit, including: attraction safety briefings and instructions, live shows and entertainment, guest services (ticketing, guest relations, etc.), dining and retail interactions, emergency announcements.

**ii**. Discovery Kingdom shall provide interpreters with schedules, show times, and relevant operational information.

**iii.** For multiple deaf or hard of hearing guests on the same day, provide a sufficient number of interpreters so all guests' needs are met.

**3. Staff Authorization and Training**

**a. National Call Center Staff:**

**i**. May accept ASL requests directly.

**ii**. Must forward requests promptly to the appropriate park office.

**iii.** Provide guests with a tracking or reference number.

**iv.** Authorized to escalate urgent requests.

**b. Public-Facing Staff at Discovery Kingdom Training:**

**i**. Cover ADA requirements for effective communication.

**ii**. Detail proper handling and documentation of ASL requests.

**iii.** Include protocols for interacting with guests who need ASL services.

**iv.** Provide regular refresher training at least annually.

**v**. Document training completion.

**vi.** Train pertinent staff in VRI equipment use and troubleshooting.

**4. Interpreter Service Agreements**

Discovery Kingdom shall:

**a**. Maintain active agreements with at least two ASL interpreter providers that:

**i**. Allow for per-request billing.

**ii**. Provide for scheduled and urgent requests.

**iii.** Establish defined response times in service-level agreements that allow for the provision of ASL interpreter services in less than seven days and seven days or more.

**iv.** Are located within 60 miles of Discovery Kingdom.

**v.** Provide qualified interpreters as required by the ADA.

**b**. Maintain backup ASL provider relationships who can accommodate last minute requests in case the established service providers cannot meet the requests.

**5. Video Remote Interpreting (VRI)**

**a**. **Equipment and Services**:

**i**. Maintain high-quality video devices with reliable internet.

**ii**. Keep at least one device (Tablet) available.

**iii.** Contract with an ADA-compliant VRI provider.

**iv.** Establish clear procedures for rapid VRI use.

**b**. **Technical Standards**:

**i**. VRI must meet 28 CFR § 36.303(f) requirements, including real-time, full-motion video, clear audio, and no lags.

**c**. **Appropriate Use:**

**i**. VRI supplements but does not replace scheduled on-site interpreters.

**ii**. Use VRI only for emergencies, brief communications, or when requested by the guest.

**iii**. Typically should be used for one-on-one interactions.

**iv**. Document reasons for using VRI instead of an on-site interpreter.

**d**. **Staff VRI Training:**

**i**. Equipment setup and operation.

**ii**. Positioning and troubleshooting.

**iii**. Emergency deployment procedures.

**e**. **Testing and Maintenance**

**i**. Weekly equipment tests.

**ii**. Monthly provider connection tests.

**iii**. Regular updates and maintenance.

**iv**. Backup power supplies and documentation of all testing.

/////

**6. Quality Assurance**

**a**. **System Testing:**

**i**. Monthly test requests via the website.

**ii**. Quarterly test calls to the National Call Center.

**iii**. Document response times and results.

**iv**. Implement corrective actions as needed.

**b**. **Guest Feedback:**

**i**. Provide post-service surveys.

**ii**. Maintain a clear complaint procedure.

**iii**. Review feedback on a quarterly basis and implement improvements.

**D. Documentation and Reporting**

**1. Request Tracking**

Defendants shall maintain written or electronic records of:

**a.** Each ASL service request received.

**b.** Response times from initial request to confirmation.

**c.** Whether ASL services were ultimately provided.

**d.** If services were not provided:

**i**. The documented reason for the denial.

**ii**. Any alternative accommodations offered.

**iii**. All communications with the guest regarding the request.

**e.** Multiple contact attempts to request an interpreter by the same guest.

**f.** Escalation actions taken.

**g.** VRI usage.

**h.** Full scope of services provided during each visit.

**i.** Documentation of good faith efforts made to secure interpreter services, including:

**i**. Details of all interpreter agencies contacted.

**ii**. Dates and times of contact attempts.

**iii**. Responses received from each agency.

**iv**. Alternative accommodations considered and offered.

**v**. Steps taken to overcome any barriers to service provision.

**2. Compliance Reports**

Defendants shall submit quarterly compliance reports to the court. Each report shall include:

**a.** Number of ASL requests received during the reporting period.

**b.** Response times and the initial percentage of requests answered within specified timeframes.

**c.** Fulfilment rates (i.e., how many requests were successfully accommodated).

**d.** Issues identified during the reporting period.

**e.** Corrective measures taken, if any, to prevent future failures.

**f.** Analysis of multiple contact attempts and resolutions.

**g.** Summary of guest feedback and resulting improvements.

**h.** Documentation of test results and corrective actions.

**i.** Status of staff training completion and effectiveness.

**j.** VRI usage statistics including:

**i**. Number of times deployed.

**ii**. Reasons for use.

**iii**. Any technical issues encountered.

**iv**. Guest feedback on VRI experiences.

**v**. Equipment testing and maintenance logs.

**k.** Analysis of interpreters provided.

**i**. Number of interpreters provided.

**ii**. Guest feedback on interpreters.

**iii**. Recommendations for service improvements.

/////

/////

**E. Implementation Timeline**

Defendants shall adhere to the following schedule:

**1. Within 30 Days of this Order:**

**a.** Develop and update policies and procedures to comply with this Order.

**b.** Create training materials to ensure staff understanding.

**c.** Initiate or update vendor contracts with ASL interpretation providers.

**d.** Establish quality assurance procedures.

**e.** Purchase and Install VRI equipment.

**f.** Establish VRI service contracts.

**g.** Complete VRI staff training.

**h.** Test VRI systems and procedures.

**2. Within 60 Days of this Order:**

**a.** Complete initial training of all public-facing staff.

**b.** Test the request intake, tracking, and response processes.

**c.** Implement feedback mechanisms.

**d.** Begin system testing procedures.

**3. Within 90 Days of this Order:**

**a.** Fully implement all website modifications and request procedures.

**b.** Begin full operation under the updated policies and protocols.

**c.** Submit the initial compliance report to the court.

**d.** Complete first round of quality assurance testing.

**F. Implementation Timeline**

**1. Court Oversight:**

**a.** The court shall retain jurisdiction to enforce this Order for three (3) years from the date of entry.

**b.** Within a reasonable time, not to exceed 30 days, after receiving a written request from plaintiff's counsel, defendants shall permit plaintiff's counsel to review the records required to be maintained by this Order, including but not limited to ASL service request logs, compliance reports, and training documentation, to verify compliance.

**c.** The court may require additional reporting or modifications based on compliance issues.

**2. Modification of the Order**

This Order may be modified only by:

**a.** A written agreement signed by all parties and approved by the court; or

**b.** A motion showing good cause for modification, which the court grants.

**3. Non-Compliance & Remedies**

If at any time defendants fail to comply with any provision of this Order, the court may, upon motion or its own initiative, impose sanctions or other appropriate relief, including but not limited to monetary sanctions, attorneys' fees and costs for enforcement, additional compliance requirements, or any other remedy authorized by law to ensure compliance.

**G. Costs and Fees**

Defendants are responsible for the costs of implementing this Order. Nothing herein affects plaintiff's right to attorneys' fees or costs as previously awarded or as may be awarded by the court for work related to this Order.

**H. Appellate Rights**

Defendants have not waived any appellate rights including but not limited to appealing any rulings made or orders entered throughout the course of the case including the November 15, 2024, Findings of Fact and Conclusions of Law and this Order.

**I. Effective Date**

This Order is effective immediately upon its entry by the court.

This Order resolves ECF No. 85.

IT IS SO ORDERED.

DATED: February 28, 2025.

SENIOR UNITED STATES DISTRICT JUDGE